Michael Baryluk
vs.
United Electric Railways Co. } No. 87247.

July 20, 1932.

JOSLIN, J. This is an action of trespass on the case for negligence and is heard on the motion of the defendant for a new trial following a verdict by the jury for the plaintiff in the sum of $11,750.

On February 26, 1931, at about 7:30 P. M., a motor bus of the defendant company, operated by its servant, was proceeding on Cumberland Hill Road, going southerly from Woonsocket in the direction toward Pawtucket. This road, which runs north and south, is of cement construction 20 feet wide, with a tarvia shoulder on each side about 6 or 7 feet in width. The road is straight for 487 feet north of the scene of the accident. The grade rises 6.1% in each 100 feet. There is a building on the west side of the road which sets in something over 25 feet. In this building there is a store with large plate glass windows. The scene

of the accident was well lighted by an overhead electric light which projected out from a pole immediately in front of the store. The night was clear and at the time of the accident there was no other traffic on the road. The jury and the Court had the benefit of a view.

Plaintiff came to the store, opened the screen door, put his hand on the knob of the other door, and then suddenly turned around, walked down the steps to the road, stopped at a point thereon with one foot on the cement and one foot on the tarvia. The plaintiff's story continues that he first saw the bus "coming fast" when it was 600 feet down the hill; that when the bus was about 100 feet away he raised his hand as a signal for the bus to stop as he intended boarding it; that he was facing the bus, whose headlights were lighted; that the bus slowed up "a little bit" for the last 100 feet; that he saw the bus turn sharply to the left; that the front part of the bus passed him and he was struck by the door of the bus, the bus continuing on; that he "tried to get away, but it struck me," and that "I did not get away, figuring the bus would stop there." The plaintiff was familiar with the location, having taken busses there previously.

In the store were three young men, Sherman, Shewczuk and Globe, all of whom testified for the plaintiff. Substantially, their testimony was to the effect that they had a clear view of the road; that they saw the plaintiff at the screen door; that they saw him hurriedly walk to the road; that they saw him in the road with one foot on the cement and one foot on the shoulder, with one hand upraised, facing the direction from which the bus was coming; that he was thus standing for 7 or 8 seconds (15 seconds according to Globe) ; that before the bus reached the plaintiff, estimated variously from 4 to 11 feet, it took a sharp left turn: that the door of the bus struck the

plaintiff and the bus continued on until it stopped on Fogarty's lawn diagonally across on the east side of the road.

The defendant argues, first, that the plaintiff was guilty of contributory negligence, and secondly, that it was physically impossible for the accident to have occurred in the manner alleged by the plaintiff.

In *Wilmarth* vs. *Cray*, 50 R. I. 496, the Supreme Court said:

"A person who is where he has a right to be may be negligent if he exposes himself to obvious danger."

In *Whalen* vs. *Dunbar*, 44 R. I. 136, the Supreme Court quoted with approval from certain decisions of other courts, as follows:

"The rule that a verdict will not be disturbed when there is evidence tending to support it does not apply where the verdict is opposed to the undisputed physical facts in the case, or is in flat contradiction of recognized physical laws, and where the testimony presented, taken as a whole, is capable of no reasonable inference of such a state of facts as would allow the plaintiff to recover."

Also:

"But a witness may be contradicted by the facts he states as completely as by direct adverse testimony."

Mr. Shurtleff, an investigator for the defendant company, interviewed the plaintiff at the hospital on the day following the accident. In this interview the plaintiff, in the presence of his son, told Mr. Shurtleff that he was walking up the hill, that he heard no horn, that he saw no bus, and that he was struck as he was walking on the edge of the concrete roadway.

Mr. Nickerson, the operator, testified that as he approached the scene of the accident he did not see any man with his hand upraised; that as he was going up the hill, he was travelling in the third of the four motor speeds; that he first saw the man about 18 or

20 feet away, at which time he was walking on the tarvia section of the road with his head down; that he sounded the horn; that plaintiff then started to run toward the middle of the road; that he had already put his foot on the foot brake; that when he was six feet from the plaintiff he swerved to the left, applying the emergency hand brake; that the plaintiff came in contact with the first window on the right side; that he brought his bus to a stop as quickly as he could, and that just before the impact took place he was traveling at the rate of 18 to 20 miles per hour and at the moment of impact 10 or 12 miles per hour.

William Meers, a passenger sitting in the front of the bus, testified that he was looking straight ahead and did not see any man with upraised hand; that the first he knew of the impending accident was when the bus started to swerve to the left. He estimated the speed at this time at 18 or 20 miles per hour.

William L. Anthony, a civil engineer, testified he made certain measurements, observations and experiments under similar conditions. Standing at the screen door he could see a lighted bus 173 feet down the hill.

The plaintiff's declaration is in one count which alleges disregard by the defendant of the duty which it owed the plaintiff "not to operate the motor bus in a negligent manner." There was no allegation of defective condition of the bus or inadequate brake system. It was not claimed that the plaintiff became a passenger of the defendant.

The plaintiff is a man 54 years of age and at the time of the accident was of at least average mental and physical vigor. He had normal senses of sight and hearing. He places himself on the road with one foot on the cement and one foot on the tarvia. He had the undoubted right to that position. He had an obligation, however, to keep open his senses to all approaching danger which he saw, or which with ordinary and reasonable prudence he should have seen. He had full knowledge of the oncoming bus travelling at a good rate of speed. He observed that there was no dimunition of that speed until the bus was within 100 feet of him and then the speed was reduced to and continued at the rate of 12 miles per hour with no apparent sign or intention of stopping for him. In these circumstances he did nothing to help himself until the bus was within a few feet of the spot where he was standing. He remained in a position of obvious danger so long that he created a peril for himself. It is argued in his behalf that he "figured the bus would stop" for him, therefore he did not get out of the way and when he "tried to get away, it was too late. . . . " Unfortunately, the plaintiff "figured" wrong. He took a chance. Had he taken one step backwards, he would have been clear of the cement portion of the road and entirely free of danger. His conduct at the time and in the circumstances was not that of the ordinary prudent and reasonable person. In the opinion of the Court, the plaintiff was wanting in ordinary care and there was a proximate connection between his contributory negligence and the injuries which he suffered.

*Peycke* vs. *U. E. Rys. Co.*, 49 R. I. 257.

Furthermore, the physical facts tend to contradict the plaintiff's story. The testimony of Engineer Anthony demonstrates that it was a physical impossibility for the front end of the bus to have cleared the plaintiff, standing in the position he says he was, with the bus moving to the left, and have the door strike him.

Plaintiff's counsel, in a very able argument, laid much stress upon the testimony of Sherman, Shewczuk and Globe. The testimony of these three young men corroborates the plaintiff

in many essential points of his case, but they do not help the plaintiff on the issue of what precaution he should, within reason, have taken for his own safety under the particular circumstances then existing.

The preponderance of the testimony is in favor of the defendant and the Court is impelled to the conclusion that the jury was either swayed by sympathy for the plaintiff or was condemning the defendant because of the sulky, inane and indifferent attitude of Nickerson, the operator of the bus, while testifying. The verdict is against the weight of the evidence and fails to do justice between the parties.

For the foregoing reasons, the Court grants the defendant's motion for a new trial.

In view of the conclusion which this Court has reached, it is perhaps unnecessary to take up the third ground urged by the defendant in its motion for a new trial, which is "that the amount of damages awarded by said verdict is excessive." However, in the light of the case of *Finnegan* vs. *United Electric Railways Co.*, 160 Atl. 84, this Court will state that in its opinion the verdict is clearly and grossly excessive.

The plaintiff was an unskilled laborer and earned, when he had worked, $30 per week. He was not steadily employed. During 1916 he had earned $788.40 and from January 1, 1931, to the date of the accident (February 23, 1931), he had earned but $20.45. He received serious and painful injuries. He was in the hospital seven weeks and was confined to his home for four months thereafter. He walks with a limp and aided by a cane. He suffered an abrasion of the scalp, multiple contusions of his legs, arms and thighs, and fractures of bones in his arms and legs. His medical expenses total less than $400. Dr. Meyers, his own physician, testified that he was about ready to do his usual work although he claims a certain limitation in the motion of the arms. The verdict is excessive. If this Court were considering granting a new trial solely on this ground, it would grant a new trial unless within five days the plaintiff remitted so much of the verdict as is in excess of $4,000.

Attorney for plaintiff: John R. Higgins, Esq.

Attorney for defendant: Earl A. Sweeney, Esq.